Joseph J. Haspel, Esq.
40 Matthews Street, Suite 301
Goshen, New York 10924
845-294-8950

*Attorney for Plaintiffs, 99 Washington LLC and One Commerce Plaza, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

99 WASHINGTON LLC and
ONE COMMERCE PLAZA LLC

           Plaintiffs,

- against -

WELLS FARGO BANK, N.A. as trustee for the registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C5

           Defendant.
------------------------------------X

Case No.

**COMPLAINT**

'11 CIV 01060

JUDGE KARAS

      99 Washington LLC ("99 Washington") and One Commerce Plaza LLC ("One Commerce"), by their attorney, Joseph J. Haspel, Esq., as and for their complaint against Wells Fargo Bank, N.A. as trustee for the registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C5 ("Well Fargo") alleges as follows:

**Parties**

    1.    99 Washington is a domestic limited liability company with its principal address located at 11 Lenore Avenue, Monsey, New York.

    2.    One Commerce is a domestic limited liability company with its principal address located at 11 Lenore Avenue, Monsey, New York.

3. Wells Fargo Bank, N.A. is a nationally chartered bank and, for purposes of diversity jurisdiction is a citizen of the State of South Dakota. Wells Fargo Bank, N.A. acts a trustee for the registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C5, and in this capacity maintains its principal place of business at 1055 10th Avenue, SE, Minneapolis, MN 55414.

4. Well Fargo is the assignee of Note and Mortgage made by Plaintiffs in favor of Capmark Bank, a Utah industrial bank.

**Jurisdiction and Venue**

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and complete diversity of citizenship exists among the parties.

6. As a national banking association doing business in the State of New York, and in particular, the trustee of the securitized loan and mortgage on One Commerce Plaza, Albany, New York, Defendant is subject to personal jurisdiction in the courts of New York, including this Court.

7. Venue is proper in this District pursuant to 28 U.S.C. §§1391(a) and (c).

**Background**

8. 99 Washington and One Commerce are the owners of an office building in Albany, New York known as One Commerce Plaza, 99 Washington Avenue, Albany, New York (Designated Section 76.25, Block 2 Lot 24) ("One Commerce Plaza").

9. On or about August 17, 2007, 99 Washington and One Commerce entered into a written "Loan Agreement" with Capmark Bank ("Capmark") (the "Loan Agreement").

10. Pursuant to the Loan Agreement 99 Washington and One Commerce borrowed $84,000,000.00.

11. At the time the Loan Agreement was negotiated, Capmark's underwriters required a Debt Service Coverage Ratio of at least 1.15:1.0 in order to make loans of the type contemplated by 99 Washington and One Commerce.

12. The Loan Agreement defines "Debt Service Coverage Ratio", as "as to a specific period, the ratio of (a) the Cash Flow Available for Debt Service, to (b) the principal and interest that would be due and payable under the Note based on the then current Applicable Interest Rate." (Loan Agreement - Article 20)

13. 99 Washington and One Commerce supplied One Commerce Plaza's financial information to Capmark and its underwriters in order to determine One Commerce Plaza's Debt Service Coverage Ratio at the time the loan relationship was to commence.

14. The financial information 99 Washington and One Commerce supplied to Capmark erroneously did not include amortization of over $19,000,000.00 in capital expenses which were being billed to tenants and formed cash flow available for debt service, a component in the Debt Service Coverage Ratio (the "Expense Amortization Mistake").

15. Capmark knew, or should have known of the Expense Amortization Mistake based upon the documents it had in its possession as part of the underwriting process.

16. The financial information 99 Washington and One Commerce supplied to Capmark mistakenly contained an amount of real estate taxes which was more than $150,000.00 inflated (the "RE Tax Mistake").

17. Capmark knew, or should have known of the RE Tax Mistake based upon the documents it had in its possession as part of the underwriting process. (The Expense Amortization Mistake and the RE Tax Mistake are collectively referred to as the "Commerce Plaza Mistakes").

18. As a result of the Commerce Plaza Mistakes, Capmark's underwriter's calculations of One Commerce Plaza's Debt Service Coverage Ratio was premised upon errors and the Debt Service Coverage Ratio at the time of the Loan Agreement's negotiation was mistakenly calculated (the "Capmark Mistake").

19. As a result of the Capmark Mistake, which was occasioned, in part, by the Commerce Plaza Mistakes, the Debt Service Coverage Ratio was mistakenly determined to be less than 1.15:1.0 (the "Flawed DSCR Calculation").

20. In order for the parties to come to terms on their financial relationship in light of the Flawed DSCR Calculation, the parties negotiated a provision providing the Lender assurances of a "Debt Service Coverage Ratio of at least 1.15:1.0 (the **"Earn-Out Critieria"**)" (Loan Agreement ¶4.04(b) (emphasis in original)). Specifically, the parties negotiated the creation of an escrow they entitled "Earn-Out Reserve" which would be available to reduce the principal of One Commerce Plaza's debt in the event it did not attain the required Debt Service Coverage Ratio by a date certain, specifically, February 1, 2008 (the "Trigger Date").

21. The requirement of the "Earn-Out Reserve" was a function and consequence of the Flawed DSCR Calculation.

22. As a result of the Loan Agreement's provisions for an "Earn-Out Reserve," the borrowers deposited $6,034,850.00 to assure that the Property would have the required Debt Service Coverage Ratio on the Trigger Date.

23. Subsequent to establishing the "Earn-Out Reserve," 99 Washington and One Commerce demonstrated that One Commerce Plaza's Debt Service Coverage Ratio exceeded the 1.15:1.0 ratio required on February 1, 2008 by the Capmark underwriters.

24. As a consequence of One Commerce Plaza's demonstration that the Debt Service Coverage Ratio exceeded underwriting requirements, 99 Washington/One Commerce were refunded $2,655,606.00 of the "Earn-Out Reserve."

25. There remains $3,344,394.00 in the "Earn-Out Reserve" ("Earn-Out Reserve Balance").

26. 99 Washington/One Commerce have demanded that the Earn-Out Reserve Balance be refunded.

27. Defendant has failed and refused to refund the Earn-Out Reserve Balance.

## AS AND FOR A FIRST CAUSE OF ACTION

28. Plaintiffs repeat and reiterate the allegations set forth in Paragraphs 1 through 27 as if fully set forth herein.

29. By mutual mistake of plaintiffs and defendant, the Loan Agreement was incorrectly drawn and does not express the actual agreement and intent of the parties in that it was understood and agreed between the parties, prior to the preparation of the written agreement, that the "Earn-Out Reserve" was required as a result of the then Flawed DSCR Calculation.

30. Had the Flawed DSCR Calculation not been flawed, the Earn-Out Reserve would not have been included in the Loan Agreement.

31. Plaintiffs executed the Loan Agreement in the belief that it embodied in the terms all of the actual agreement and underwriting requirements.

32. Plaintiffs have duly performed all the conditions of the agreement on their part to be performed.

33. As a result of the foregoing, Plaintiff seeks a judicial declaration reforming the Loan Agreement to delete the terms relating to the "Earn-Out Reserve."

34. Plaintiff has no adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION

35. Plaintiffs repeat and reiterate the allegations set forth in Paragraphs 1 through 34 as if fully set forth herein.

36. With the passing of the Trigger Date, and One Commerce Plaza's Debt Service Ratio being in excess of that required, Wells Fargo's right to hold the Earn Out Reserve Balance has terminated.

37. The "Earn-Out Reserve" is not prospectively necessary under the ratio requirements of the Loan Agreement or the intent of the parties in negotiating the "Earn-Out Reserve."

38. Wells Fargo continues to exercise dominion and control over the Earn Out Reserve Balance to the exclusion of its rightful owners, 99 Washington and One Commerce.

39. Wells Fargo has converted 99 Washington and One Commerce's Funds.

40. As a result of the foregoing, 99 Washington and One Commerce has been damaged in the amount of $3,344,394.00.

## AS AND FOR A THIRD CAUSE OF ACTION

41. 99 Washington and One Commerce repeat and reiterate the allegations set forth in Paragraphs 1 through 40 as if fully set forth herein.

42. Wells Fargo has commingled 99 Washington and One Commerce's funds and it has used such funds without providing 99 Washington and One Commerce with interest thereon.

43. As a result of the foregoing, Wells Fargo has been unjustly enriched, and 99 Washington and One Commerce has been damaged in the amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION

44. 99 Washington and One Commerce repeat and reiterate the allegations set forth in Paragraphs 1 through 43 as if fully set forth herein.

45.   99 Washington and One Commerce are entitled to declaratory relief, declaring that the purpose of the Earn-Out Reserve has been fulfilled, and the Earn Out Reserve Balance should be released.

46.   WHEREFORE, plaintiff demands judgment:

A) On the First Cause of Action that the Loan Agreement be reformed to conform to the parties' intent;

B) On the Second Cause of Action for conversion in the amount of $3,344,394.00;

C) On the Third Cause of Action for unjust enrichment in an amount to be determined at trial;

D) On the Fourth Cause of Action for declaratory relief, declaring declaring that the purpose of the Earn-Out Reserve has been fulfilled, and the Earn Out Reserve Balance should be released; and

E) Such other and further relief as to this Court seems just and proper.

2/14/11

Respectfully submitted,

Joseph J. Haspel
*Attorney for Plaintiffs*
40 Matthews Street
Suite 301
Goshen, New York 10924
845-294-8950